UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DARLENE KING, | ) | Case No. 1:02 CV 0939 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | (Regarding ECF # 23, 36) |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Pursuant to assignment Paulette Balin, attorney for plaintiff, seeks an award of $18, 086.25 for attorney fees and $593.89 for expenses under the Equal Access to Justice Act (EAJA, 28 U.S.C. §2412(c) & (d)). [1]

This Court ordered the reversal of the Commissioner's denial of benefits and remand of this case for reconsideration in light of treating physician's opinion from Dr. Freedman on Darlene King's residual functional capacity pursuant to the fourth sentence of 42 U.S.C. §405(g). Under these circumstances, plaintiff did prevail. See *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993). The Commissioner does not challenge King's status as a prevailing party or the timeliness of the fee application. However, the Commissioner does argue that this court should deny these fees primarily because the Commissioner's position was substantially justified

---

[1] King's October 14, 2006 assignment of her interest to Attorney Balin for an award under the EAJA appears in her supplement as ECF # 36-6. It contains an assignment of fees, but not expeneses.

1:02 CV 0939                                                         2

so there is no entitlement to an award of attorney fees and expenses under the EAJA, and secondarily, because there are special circumstances that make the award unjust.

*There are no Special Circumstances:*

Beginning with the secondary argument, the Commissioner contends that while the EAJA does not define or explain what is meant by special circumstances, Congress described this exception as a "safety valve" that:

> helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made.

H.R. Rep. No. 1418, 96th Cong., 2d Sess. at 11; and see *Oguachuba v. I.N.S.* 706 F.2d 93, 98 (2nd Cir.1983) (quoting same)

Here, there were no good faith arguments advanced by the ALJ or Commissioner. The ALJ simply attempted to avoid making the required evaluation of the treating physician's opinion by denying its authenticity after the hearing when the opinion's authenticity was not questioned, and basing the decision on an invalid reason since a similar signature was not disputed. In short the ALJ had accused counsel of submitting a false, if not forged, opinion from Dr. Freedman. False accusations of this nature do not advance vigorous enforcement efforts of the Social Security Act. This is not a situation where claimant acted with "unclean hands." Compare, *Oguachuba v. I.N.S.* 706 F.2d at 98.

1:02 CV 0939                                                      3

*There was no Substantial Justification:*

> Analysis of the issue of substantial justification begins with the EAJA itself:
>
>> . . . Whether or not the position of the United States was substantially justified shall be determined on the basis of the record **(including the record with respect to the action or failure to act by the agency upon which the civil action is based)** which is made in the civil action for which fees and other expenses are sought. (emphasis added).
>
> 28 U.S.C. § 2412(d)(l)(B).

The burden of establishing that the position of the United States was substantially justified is on the agency. See *Scarborough v. Principi*, 541 U.S. 401, 414, 124 S.Ct. 1856, 158 L.Ed. 674 (2004); *Pierce v. Underwood*, 487 U.S. 565, 567, 101 S.Ct. 2541, 101 L.Ed.2d 490 (1988). When the government can demonstrate that its case had a reasonable basis both in law and fact, no award will be made. *Wyandotte Savings Bank v. N.L.R.B.*, 682 F.2d 119, 120 (6th Cir. 1982); *Trident Marine Const., Inc. v. District Engineer of U.S. Army Corps of Engineers*, 766 F.2d 974, 980 (6th Cir. 1985); *Jankovich v. Bowen*, 868 F.2d 867, 869 (6th Cir. 1989). "Indeed, 'Congress did not . . . want the 'substantially justified' standard to 'be read to raise a presumption that the Government position was not substantially justified simply because it lost the case. . .'" *Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004), quoting *Scarborough v. Principi*, 124 S.Ct. at 1866. As expressed by the Supreme Court, "the proper standard in EAJA cases is whether the Government's position was justified, both in fact and in law, to a degree that could satisfy a reasonable person." *Jankovich v. Bowen*, 868 F.2d at 869, *citing Pierce v. Underwood*, 487 U.S. 565, 108 S.Ct. 2541, 101 L.Ed.2d 490, 504 (1988); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991). "To be 'substantially justified' means . . . more than merely undeserving of sanctions for frivolousness." *Pierce*, at 565-66; *Commissioner, INS v. Jean*, 496 U.S. 154, 158 n. 6, 110 S.Ct. 2316, 110 L.Ed. 2d 134 (1990).

1:02 CV 0939                                           4

In this analysis, the district court must examine "both the underlying and litigation position." *Delta Engineering v. U.S.*, 41 F.3d 259, 262 (6th Cir. 1994). Where the administrative law judge has engaged in selective consideration of the evidence in denying benefits, the Commissioner's decision to defend the administrative decision in court is without substantial justification. *Howard*, 376 F.3d at 554, citing *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995).

King raised four arguments for reversal of the denial of benefits, all of which centered around the ALJ's rejection of Dr. Freedman's residual functional capacity assessment for illegible signature which did not match any of King's treating physicians (Tr.17). The Court found this reason to be invalid, but the Commissioner contends that although the Court concluded that the residual functional capacity assessment was signed by Dr Freedman, the government was at least reasonable in concluding that the signature was illegible and was not the same mark used by Dr. Freedman. However, scrutiny of the administrative hearing transcript shows that King's counsel spoke of Dr. Freedman's residual functional capacity assessment when cross-examining the medical advisor (Tr. 367) and pointed out this exhibit by its index number of 24F when cross-examining the vocational expert. (Tr. 373). At the hearing neither the ALJ nor the experts questioned the authenticity of Exhibit 24F. Also during counsel's cross-examination of the medical advisor, counsel referred to Exhibit 23F which also contained a report from Dr. Freedman bearing a strikingly similar signature above his typed name (Tr. 288-89, 366). All that was missing on Exhibit 24 F was a typed name under this doctor's illegible signature. In order to reach the ALJ's conclusion, the cross-examination testimony would have had to have been ignored.

1:02 CV 0939                                              5

The ALJ found that King could preform light work based on the medical advisor 's testimony, whereas Dr. Freedman's opined that King could not even perform the full range of sedentary work (Tr. 293-95). The ALJ failed to fulfill the duty to provide valid reasons to reject the treating physician's opinion:

> A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996).
>
> *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

This error could not be disregarded as harmless. The vocational expert testified that the doctor's opinion that King needed multiple rest breaks during the day would have significant vocational impact (Tr. 295, 374). Compare *Heston v. Commissioner of Social Sec.,* 245 F.3d 528, 534, 73 Soc.Sec.Rep.Serv. 108 (6th Cir. 2001). So, in response to the argument whether the Commissioner's underlying and litigation positions were reasonable, the answer is, no.

*Amount of Award- Hourly Rate:*

The EAJA allows for the award of attorneys' fees "based upon the prevailing market rates for the kind and quality of the services furnished," capped at $125 per hour, "unless the court determines that an increase in the cost of living . . . justifies a higher fee." 28 U.S.C.§ 2412(d)(2)(A)(ii); and see *Begley v. Secretary of Health and Human Servs.*, 966 F. 2d 196, 199 (6th Cir. 1992). Attorney Balin in her first schedule for fees filed May 24, 2004, seeks an hourly fee computed at $150.00, calculated at $125.00 adjusted for the cost of living in 2004. However, a

1:02 CV 0939                                        6

substantial amount of the hours sought were incurred in 2002 and 2003. The cost of living increase should be based on the year services were provided, not the year the fee application is filed. See *Jones v. Commissioner of Social Sec.*, 2007 WL 1362776, 4 (S.D. Ohio); *Willis v. Sullivan*, 730 F. Supp. 785, 789 (M.D. Tenn. 1990).

The Consumer Price Index (CPI) is used to compute the cost of living adjustment from March 1996 when Congress amended the hourly rate for fees to $125.00. This index though, is comprised of several subcategories including the All Items Index, and the Other Services Index of which legal service fees is a subcategory. At least one court in this district has indicated its preference for the latter index over the All Items Index. See *Richards. v. Secretary of Health and Human Services*, 884 F. Supp. 256, 260 n. 1 (N.D. Ohio 1995). This Court agrees that the All Items Index is not the best indicator. The better choice is the aggregate Consumer Price Index for Urban Wage Earners and Clerical Workers (CPI-W) of which the Other Services Index is a subcategory. This neatly dovetails with the annual cost of living increases computed using the CPI-W for Social Security recipients.[2] There is also a preference for using an annual average for computing the increase in the cost of living based on March 1996, when Congress adopted the $125.00 rate. See *Ward v. Commissioner of Social Sec.*, 2008 WL 5099713, 2 (S.D. Ohio); *London v. Halter*, 203 F. Supp. 367, 373 (E.D. Tenn. 2001); *Cook v. Barnhart*, 246 F. Supp. 908, 910 (E.D. Tenn. 2003).

---

[2] "The Bureau of Labor Statistics (BLS) publishes the Consumer Price Index for Urban Wage Earners and Clerical Workers (CPI-W) on a monthly basis. We use the CPI-W to annually adjust benefits paid to Social Security beneficiaries." Social Security Online, Office of the Chief Actuary at http://www.ssa.gov/OACT/STATS/cpiw.html .

1:02 CV 0939                                                        7

The Commissioner has no objection to the cost of living adjustment but the Commissioner uses a base rate of 155.7 for the CPI in March 1996, which indicates that the Commissioner has used the All Items Index. (See Plaintiff's Ex. B, ECF# 23-3). The Court does not accept these computations.

The CPI-W Index was 152.90 in March 1996. See http://www.ssa.gov/OACT/STATS/cpiw.html. The annual average CPI-W for 2002 was 175.875, for 2003 was 179.808, and for 2004 was 184.483. *Id.* (Average CPI-W, by year). The ratios for change are computed by dividing the annual average CPI-W by the rate form March 1996. For example for 2002 this computes to a multiplier of 1.150 (175.875 ÷ 152.90), which is applied to the $125.00 per hour statutory cap to produce the adjusted hourly rate of $143.75.  Accordingly the appropriate rates adjusted for cost of living for 2002 is $143.75, for 2003 is $150.00 and 2004 is $150.82.

*Reasonable Number of Hours:*

Attorney Balin seeks an award computed on 42.25 hour. The Commissioner attaches a copy of *Walker v. Barnhart*, Case No. 1:00 CV 3114 (N.D. Ohio), where Magistrate Judge Hemann commented that 24 to 30 hours " is average in similar cases." This Court is aware, though, that in *Hayes v. Secretary of Health & Human Servs*. the court noted the average number of hours for an attorney to work on a social security case ranged from 30 to 40.  *Id.*, 923 F.2d 418, 420 (6th Cir. 1990). Whether King's case is "similar" to Walker's is questionable and when it comes to using averages, of this nature, it would seem that the Sixth Circuit's range would be based on a greater sample.

1:02 CV 0939                                              8

Reviewing Attorney Balin's itemization of hours expended, the Commissioner objects to .25 hr. for seeking extension of time. Plaintiff's counsel cannot include time spent on obtaining an extension of time. See *Burr v. Bowen*, 782 F. Supp. 1285, 1290 ( N.D. Ill. 1992). The Commissioner also objects to 2.00 hr. for preparing the EAJA fee petition. The Commissioner is referred to *Commissioner, I.N.S. v. Jean,* 496 U.S. 154, 162, 110 S.Ct. 2316, 2321, 110 L.Ed.2d 2316 (1990), citing *Kelly v. Bowen*, 862 F.2d 1333, 1334 (8th Cir. 1988). This time is compensable.

Accordingly, for the 8.75 hours expended in 2002, the fee award computes to $1257.81. For the 30.25 hours expended and allowable in 2003 the fee award computes to $4537.50. For the 3.0 hours expended in 2004 the fee award computes to $452.46. The total for all three years is $6,247.77.

Attorney Balin seeks the time for the appeal from the initial denial of her fee application. Originally, there had been no assignment of the fee award to Attorney Balin. The request stated:

> Now comes Plaintiff's attorney, Paulette F. Balin, and respectfully requests that this court issue an order authorizing payment of attorney fees of $6,337.50, to be paid by the Defendant *directly* to Paulette F. Balin, pursuant to the Equal Access to Justice Act, 28 U.S. C. Section 24. (emphasis in original).

(See ECF # 23).

This Court rejected this fee application as facially defective reasoning:

> Attorney Balin, though, incurred no attorney fees; rather, her client King did. Further, Attorney Balin was not a party, and cannot be the prevailing party. See *Knight v. U.S.*, 982 F.2d 1573, 11583-84 (Fed. Cir. 1993); *Phillips v. General Services Administration*, 924 F.2d 1577, 1582 (Fed. Cir. 1991) (attorney could not

1:02 CV 0939                                                                9

> directly claim to be entitled to award under EAJA); compare *Brown v. General Motors*, 722 F.2d 1009, 116 (2nd Cir. 1963) (in application for attorney fees under 42 U.S.C. §1988 fee must be asserted by a prevailing party unless claimant assigned the claim to the attorney or otherwise consented to an attorney's application for fees). Attorney Balin has not provided any indication of an assignment or that her client consents to a fee payment directly to her. Consequently, the motion before the court under the Equal Access to Justice Act is improper and lacking substantiation that King consents to this motion that seeks direct payment to Attorney Balin.

King untimely moved to alter or amend judgment, but this Sixth Circuit liberally construed this to be a Rule 60(b) motion and reversed stating:

> Considering an argument similar to the Commissioner's here, the Second Circuit decided to address the merits of a fee application because although "the original application ... was made in the name of ... counsel," apparently without clarification before the district court, the client "filed notice of this appeal in his own name." *Oguachuba v. INS,* 706 F.2d 93, 97-98 (2d Cir.1983). The court held that "doubt may reasonably exist as to whether this substitution cures the defect in the initial application for fees," but "treat [ed the party's] ... appeal as retroactively adopting his counsel's application for fees." *Id.* at 98.
>
> In this case, only the words "Now comes Plaintiff's attorney" support the conclusion that counsel applied for fees on her own behalf, and this wording may well have been inadvertent. These words might also simply convey that counsel was representing appellant in her application for attorney's fees rather than substituting herself as the real party in interest. In any case, the name of the party in interest is indicated by the fact that the application is captioned in the name of appellant as plaintiff and signed by counsel as "Attorney for Plaintiff"; that appellant's reply to the Commissioner's response to the application properly begins, "Now comes Plaintiff, by and through her counsel"; and that the Commissioner's response itself begins, "This matter is before the Court on Plaintiff's application for attorney fees." Thus, appellant clarified the matter in several filings before the district court, beginning significantly before the application was denied. Finally, not only appellant's appeal, but also her Motion to Amend or Alter in the district court, was brought in her own name; in both, she plaintively and repeatedly explains that the application was not made by counsel as the real party in interest, but was "on behalf of the Plaintiff."
>
> Unlike the applicant in *Oguachuba,* appellant did not make a doubtful last-minute substitution of herself as the real party in interest; rather, beginning before her application was denied and certainly before her appeal, she clarified repeatedly that she was the real party in interest. Thus, she did not merely "retroactively adopt" counsel's application for fees on appeal; rather, the application was always appellant's, although inartfully styled.

1:02 CV 0939                                             10

>   *King v. Commissioner of Social Sec.* 230 Fed.Appx. 476, 482, 2007 WL 930275, 5 (6th Cir. 2007).

The Sixth Circuit concluded by instructing this Court to determine eligibility under the test from *Jean.*
*King,* 230 Fed. Appx. at 483.

As *Jean* instructs there are three "threshold conditions" : whether plaintiff is a prevailing party and then whether the government's position was substantially justified or special circumstances make the award unjust. See *Commissioner, I.N.S. v. Jean ,* 496 U.S. at 160, 110 S.Ct. at 2320:

>   The single finding that the Government's position lacks substantial justification, like the determination that a claimant is a "prevailing party," thus operates as a one-time threshold for fee eligibility. In EAJA cases, the court first must determine if the applicant is a "prevailing party" by evaluating the degree of success obtained. If the Government then asserts an exception for substantial justification or for circumstances that render an award unjust, the court must make a second finding regarding these additional threshold conditions. . . . [O]nce a private litigant has met the multiple conditions for eligibility for EAJA fees, the district court's task of determining what fee is reasonable. *Id.*

Prior to the appeal, this Court did not believe there was any need to resolve the final two of these threshold conditions because of an apparently defective application and untimely motion to alter or amend judgment. Thus, what had been viewed as Attorney Balin's EAJA fee request was denied without reaching the remaining threshold issues, aside from King's status as a prevailing party. *Jean* did not involve attorney fee litigation over the "clarification" of who was the movant for fees. However, the Supreme Court did state in *dicta ,* that ,"[e]xorbitant, unfounded, or procedurally defective fee applications-like any other improper position that may unreasonably protract proceedings-are matters that the district court can recognize and discount." *Commissioner, I.N.S. v. Jean ,* 496 U.S. at 163, 110 S.Ct. at 2321. King's appeal was not over

1:02 CV 0939                                        11

any of the threshold issues, and as the Commissioner argues there is no reason why he should bear the expenses that resulted over an issue that he played little part.

There will be no fees awarded subsequent to the 2004 fee application. Attorney Balin did move for fees and her intent to amend the application to clarify that King was the real party in interest, was at best obtuse, especially considering that these were counseled proceedings. Counsel's "inadvertence" unreasonably protracted the EAJA fee application.

*Expenses:*

Attorney Balin seeks an award of $593.89 in expenses. Her supplemental affidavit dated March 31, 2008 does not state that these were incurred in this litigation (ECF # 36-1). The affidavit only makes a "request." There is a separate schedule for expenses incurred, but the first item of supporting documentation bears no amount but written underneath is "Typically $4.70." This is not a contemporaneous verifiable record of expense. In any event, the expenses sought were related to King's appeal, and were part of the necessarily protracted litigation spawn by Attorney Balin's inadvertence and lack of clarification over who was the movant for fees under the EAJA.

1:02 CV 0939                                      12

### *CONCLUSION*

For the foregoing reasons, Paulette Balin's application and supplemental application for payment of attorney fees and expenses pursuant to the Equal Access to Justice Act is granted in part for the amount of $6,247.77 for attorney fees and no award is made for expenses. Judgment will be entered for a total award of $6,247.77 payable to Attorney Paulette F. Balin pursuant to assignment.

                                                      s/James S. Gallas
                                              United States Magistrate Judge

January 21, 2009